411 So.2d 1347 (1982)
Donesta LAY and Larry Lay, Appellant,
v.
George KREMER, Jr., Appellee.
No. ZZ-436.
District Court of Appeal of Florida, First District.
April 5, 1982.
Gail A. Gottardo of Searcy & Facciolo, P.A., Jacksonville, for appellant.
Earl M. Barker, Jr. of Marks, Gray, Conroy & Gibbs, Jacksonville, for appellee.
MILLS, Judge.
This case, arising from a dispute over a reserved parking space, is making its second appearance here. See Lay v. Roux Labs, 379 So.2d 451 (Fla. 1st DCA 1980). The previous opinion affirmed a dismissal of a count for intentional infliction of emotional distress and remanded for trial on assault and battery counts against both Kremer and his employer Roux Laboratories. On remand the trial court directed a verdict in *1348 favor of the defendants at the close of Lay's case. We feel that the evidence, when viewed in the light most favorable to Lay, reveals a prima facie case for battery. We, therefore, reverse. Roux has subsequently settled with Lay and is not a party to this appeal.
A brief review of the evidence reveals that during a rainstorm Lay parked in a spot marked "Reserved Roux". Apparently Roux had problems with others using its parking before. Kremer, owner of 998 out of 1000 shares of Roux at the time and an officer of Roux, entered the parking lot and, finding the reserved space taken by Lay, parked behind her. Lay, of course, was unable to leave. While Lay and a coworker, King, were trying to move her car, Kremer saw them and came out of the building. Kremer was coming from in front of the car, King was sitting in the driver's seat, and Lay was standing by the front left fender between her car and another, also improperly parked in a Roux space.
According to Kremer he approached and inquired who owned the car; he informed Lay she was trespassing and asked her not to do it again. He then moved his car so she could get out, but she refused. At that time heated words were exchanged, and the exchange included others of Lay's coworkers. He never touched Lay.
According to King, Kremer approached looking enraged. He brushed past Lay with his left arm and talked to King. Upon learning Lay was the owner, he turned and began using abusive language. He called her a "mother-fucking nigger" and a "bitch". The trial court would not let the witness say "nigger" in front of the jury, substituting "black."
Lay testified that Kremer directed the above language at her and at the same time put both hands on her shoulders and shoved her as he went by toward King. Specifically Lay's testimony was:
Q. Okay. Now, when you first saw Mr. Kremer, where were you and where was Mr. King?
A. I was about  well, Mr. King was in the car and in the driver's side. I was standing in front of the driver's door.
Q. Okay. What happened next?
A. I saw Mr. Kremer and another man coming out of the back door of the building. It was about forty feet away.
Q. What was Mr. Kremer's appearance when you first saw him?
A. He came out; his face was flaming red; his eyes were bulging out. He terrified me. I didn't know, you know 
Q. Did he say anything to you as he came towards you?
A. Yes.
Q. What did he say?
A. He started screaming and asking whose car was it. He kept repeating it, whose car was it.
Q. What tone of voice?
A. Hard. Whose car is this, whose car is this (demonstrating). And I told him it was mine. And he asked me my name; what is your name, what is your name (demonstrating). And I told him my name and he asked me where did I work and I told him Amtrak and that's when I asked why did he need all this information. And that's when he came towards me.
[A proffer outside the presence of the jury took place.]
Q. All right. Donesta, the last thing the jury heard was that he was coming towards you. What happened?
A. Came towards me, and he pushed me and he called me a "mother fucking black."
THE COURT: I'm going to ask the jury to step out of the room a moment. Oh, that's all right? Yes.
BY MS. GOTTARDO:
Q. All right. How much space was there between your car and the car parked next to it?
A. It was enough space for two people to walk through.

*1349 Q. Was there enough space where Mr. Kremer could have gotten around you without touching you?
A. Yes.
Q. What happened after Mr. Kremer  first of all, can you describe for the jury the manner in which he shoved you?
A. He came towards me; he shoved me with both hands on the shoulders.
It is clear that a jury could have inferred that Kremer intentionally touched Lay and that the touch was intentionally offensive. A two-handed shove is not likely to be accidental. Kremer's enraged appearance, as well as his abusive language is evidence which would have supported a jury finding that his intent was to be offensive. The direction of a verdict was error.
The directed verdict on the action for damages for assault was also erroneous. Assault is defined as an intentional, unlawful offer of corporal injury to another by force, or force unlawfully directed toward another under such circumstances as to create a fear of imminent peril, coupled with the apparent present ability to effectuate the attempt. Lay testified that after the shoving incident Kremer continued to harangue her in very abusive terms, and he continued to appear enraged. While mere words do not constitute an assault, the words coupled with an appearance of rage and with a just completed shove could constitute an assault. The reasonableness of Lay's apprehension of further contact was properly a jury question. McDonald v. Ford, 223 So.2d 553 (Fla. 2d DCA 1969).
For the guidance of the trial court on remand, we will discuss the remaining points argued on appeal. Two of the arguments raised by Lay have merit. The complaint included a count for punitive damages. In furtherance of that count Lay sought discovery of Kremer's finances. The trial court refused to compel discovery, instead ruling that a sworn net worth statement by Kremer would be provided if the evidence supported punitive damages. While there is some authority for this position, our Supreme Court has ruled to the contrary. The case of Tennant v. Charlton, 377 So.2d 1169 (Fla. 1979), held that a plaintiff was not required to accept on faith a defendant's financial statement but was entitled to discovery as a check on the defendant's credibility. We think that Tennant controls this case. Of course, the trial court has discretion to protect Kremer from unduly vexatious discovery and to protect his secrets. Fla.R.Civ.P. 1.280(c).
Finally, the trial court would not allow Lay or other witnesses to quote Kremer as saying "nigger"; instead the word "black" was substituted. A trial court has discretion to control the use of inflammatory language in the courtroom, and indeed should control such language, but the exclusion of the word "nigger" abused that discretion in the instant case. Obviously, the word is inflammatory. Kremer uttered it only because it was inflammatory. It is relevant to this case and in particular to Kremer's intent only because it is inflammatory. The witnesses should be allowed to repeat Kremer's statements exactly as they recall them.
The other issues raised by Lay are affirmed and do not require discussion.
For the above reasons, the judgment is reversed and the cause is remanded for further proceedings consistent with this opinion.
WENTWORTH and THOMPSON, JJ., concur.