Steven GOMEZ, Plaintiff,

v.

Andy LOZANO et al., Defendants.

Case No. 09–22988–CIV.

United States District Court,
S.D. Florida,
Miami Division.

Jan. 6, 2011.

Order Clarifying Decision Jan. 21, 2011.

John Bruce Ostrow, Stephen Asher Ostrow, John B. Ostrow, PA, Miami, FL, for Plaintiff.

Joshua Michael Entin, Mendy Halberstam, Rosen Switkes & Entin P.L., Robert F. Rosenwald, Jr., City of Miami Beach City Attorney's Office, Miami Beach, FL, for Defendants.

### ORDER DENYING IN PART AND GRANTING IN PART MOTION TO DISMISS

ADALBERTO JORDAN, District Judge.

For the following reasons, the City of Miami Beach's motion to dismiss the second amended complaint [D.E. 94] is DENIED IN PART AND GRANTED IN PART. Steven Gomez's claim for municipal liability under 42 U.S.C. § 1983 (Count XVI) is dismissed without prejudice, Mr. Gomez's claim for malicious prosecution (Count XIX) is dismissed without prejudice, and Mr. Gomez's claim for assault and battery (Count XVII) survives. Miami Beach shall answer the remaining Counts by January 18, 2011.

### I. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must plead "either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir.2001). The court must limit its consideration to the complaint. *See GSW, Inc. v. Long County*, 999 F.2d 1508, 1510 (11th Cir.1993). The factual allegations are accepted as true and all reasonable inferences from these allegations are drawn in the plaintiff's favor. *See Roberts v. Fla. Power & Light Co.*, 146 F.3d 1305, 1307 (11th Cir.1998). The plaintiff, however, must allege more than "labels and conclusions." *See Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282 (11th Cir.2007) (per curiam) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–55,

127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The factual allegations in the complaint must "possess enough heft" to set forth "a plausible entitlement to relief." *Id.*

### II. FACTUAL ALLEGATIONS

Mr. Gomez sues the City of Miami Beach for the actions allegedly committed by three Miami Beach police officers. According to the second amended complaint, after a group threatened Mr. Gomez on Miami Beach, Mr. Gomez walked away [D.E. 70 ¶ 10]. When Mr. Gomez reached Eighth Street, a Miami Beach police officer, without provocation and to Mr. Gomez's surprise, grabbed Mr. Gomez's arm [*Id.* ¶ 11]. Another officer then showed up and helped the first officer throw Mr. Gomez to the ground [*Id.* ¶ 12]. Yet another Miami Beach police officer helped keep Mr. Gomez on the ground [*Id.* ¶ 13].

Without provocation, two of the officers began hitting Mr. Gomez [*Id.* ¶ 14]. One officer sat on Mr. Gomez's head and punched Mr. Gomez's eye, ribs, and mouth as another punched Mr. Gomez's ribs [*Id.* ¶¶ 16–18]. Mr. Gomez was seriously injured [*Id.*]. The police officers then arrested Mr. Gomez, though Mr. Gomez first went to a hospital for treatment of his injuries [*Id.* ¶ 19].

Mr. Gomez also blames the City of Miami Beach for the police officers' actions. The second amended complaint alleges that, in 1993, Miami Beach established a committee "to review and propose revised policies ... concerning frequent instances of excessive use of force" [*Id.* ¶ 28]. The committee investigated the relationship between the Miami Beach police department and Miami Beach residents [*Id.*]. Upon finishing its investigation, the committee gave Miami Beach ten recommendations to improve the relationship between the local police and local residents [*Id.* ¶ 29]. The recommendations included psychological testing of potential police officers and the

creation of a procedure whereby residents could launch complaints against the police in a location other than the police station [*Id.* ¶ 30]. Miami Beach followed through on one of the ten recommendations [*Id.* ¶ 31]. Mr. Gomez also alleges that Miami Beach "failed to provide adequate sensitivity training ... to train its officers to have proper sensitivity towards the local youth and vacationers on Miami Beach" [*Id.* ¶ 32]. Mr. Gomez lastly alleges that the police officers' actions arose from Miami Beach's "lack of supervision of the custom and practice of its Police Officers and their ability to appropriately react to low threat disturbance without causing the deprivation of one's constitutional rights" [*Id.* ¶ 160].

## III. ANALYSIS

Mr. Gomez raises four claims against Miami Beach, and Miami Beach moves to dismiss three—(1) malicious prosecution; (2) assault and battery; and (3) § 1983 violation for unlawful seizure, false arrest, and false imprisonment. As I explain below, I grant Miami Beach's motion to dismiss as to Counts XIX (malicious prosecution) and XVI (§ 1983) but deny it as to Count XVII (assault and battery).

### A. MIAMI BEACH IS IMMUNE FROM MALICIOUS PROSECUTION CLAIMS

■ Like many states, Florida has partially waived its sovereign immunity. But Florida has not waived its sovereign immunity for every tort. Critically, Florida "or its subdivisions shall not be liable in tort for the acts or omissions of an officer, employee, or agent ... committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." FLA. STAT. § 768.28 (2010). To state a cause of action for malicious prosecution in

Florida,[1] a plaintiff must establish six elements:

(1) an original criminal or civil proceeding against the present plaintiff was commenced or continued; (2) the present defendant was the legal cause of the original proceeding against the present plaintiff as the defendant in the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the present defendant; and (6) the plaintiff suffered damage as a result of the original proceeding.

*Alamo Rent–A–Car v. Mancusi,* 632 So.2d 1352, 1355 (Fla.1994). The fifth element—the necessity of malice—defeats Mr. Gomez's claim against Miami Beach, for Florida has refused to waive sovereign immunity in cases where an employee acts with malice. As a result, Miami Beach, as a subdivision of Florida, has sovereign immunity against Mr. Gomez's malicious prosecution claim, and courts have consistently so held. *See, e.g., Fla. Dep't of Envtl. Prot. v. Green,* 951 So.2d 918, 920 (Fla.Dist.Ct.App.2007) ("Because 'malice' is a necessary element of malicious prosecution and section 768.28(9)(a) immunizes the State and its agencies from 'malicious' acts of its employees while they are acting within the scope of their employment, [the plaintiff] is barred from bringing a malicious prosecution claim against [the state agency]."); *Irani v. City of Hallandale,* 756 So.2d 110, 110 (Fla.Dist.Ct.App.1999) ("We write only to note the trial court correctly dismissed [the plaintiff's] malicious prosecution count [against a city] as barred by section 768.28(9)....").

---

**1.** Mr. Gomez does not dispute that his malicious-prosecution claim is based on Florida law.

Mr. Gomez argues that he has not alleged "malice" in his malicious-prosecution claim against Miami Beach. But, to state a cause of action for malicious prosecution, Mr. Gomez must allege malice. *See Alamo Rent–A–Car*, 632 So.2d at 1355. If Mr. Gomez does not allege malice, then he cannot legally set forth a claim for malicious prosecution; if Mr. Gomez alleges malice, then § 768.28(9) protects Miami Beach from liability. Mr. Gomez faces a Catch–22 he cannot avoid. Mr. Gomez cannot state a cause of action for malicious prosecution against Miami Beach, and thus Count XIX is dismissed without prejudice.

**B. Mr. Gomez's Claim for Assault and Battery Does Not Violate the Federal Rules of Civil Procedure**

■ Miami Beach argues that Count XVII, for assault and battery, violates the Federal Rules of Civil Procedure by listing two different torts in one count. Miami Beach's argument is unconvincing.

Under Rule 10(b), "[i]f doing so would promote clarity, each claim founded on a separate transaction or occurrence ... must be stated in a separate count or defense." Fed.R.Civ.P. 10(b). Here both the assault and the battery alleged by Mr. Gomez arose from the same transaction or occurrence: the Miami Beach police officers attacked Mr. Gomez but once. And both the common-law tort of assault (fear of battery)[2] and battery (unlawful touching)[3] arose from that single attack.

Miami Beach's motion to dismiss (or alternatively for more definite statement) is denied as to Count XVII (assault and battery).

**C. Mr. Gomez Has Failed to Allege Any Facts Showing a Policy or Custom of Unlawful Seizure, False Arrest or False Imprisonment**

■ In order to impose § 1983 liability on a municipality, like Miami Beach, Mr. Gomez must identify a municipal policy or custom that caused his injuries. *See Bd. of Cnty. Com'rs v. Brown*, 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). A court can hold the municipality liable only if its custom or policy caused the municipal "employees to violate a citizen's constitutional rights." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998). Inadequate police training may place liability on a municipality, but the inadequate training must arise from the municipality's deliberate indifference to the rights of those with whom the police interact. *See City of Canton v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). And, to show this deliberate indifference, a plaintiff must show a pattern of improper training and must show that the city was aware of its training program's deficiencies. *See Skop v. City of Atlanta*, 485 F.3d 1130, 1145 (11th Cir.2007). Because Mr. Gomez has not alleged that Miami Beach had a custom or policy of making its police officers detain or beat innocent pedestrians without rhyme or reason or that Miami Beach showed a deliberate indifference to the rights of those with whom the police interacted, I dismiss Mr. Gomez's § 1983 claim against Miami Beach without prejudice.

Mr. Gomez does not allege that Miami Beach had an affirmative policy or custom of goading its police officers to cause havoc

---

**2.** In Florida, the tort of assault consists of (1) the intentional offer of unlawful, bodily injury by force or force unlawfully aimed at another to create fear of fast approaching harm and (2) the apparent ability to cause the injury. *See Lay v. Kremer*, 411 So.2d 1347, 1349 (Fla.Dist.Ct.App.1982).

**3.** "Battery," in Florida, means the infliction of a harmful or offensive touch on another plus the intent to cause such contact or the intent to cause apprehension of imminent contact. *See Paul v. Holbrook*, 696 So.2d 1311, 1312 (Fla.Dist.Ct.App.1997).

on innocent bystanders. Mr. Gomez, rather, alleges that Miami Beach has failed to provide adequate sensitivity training and failed to supervise its police officers [D.E. 70 ¶¶ 31, 160]. Mr. Gomez must therefore show (1) that a pattern of police officers detaining and roughing innocent pedestrians gave Miami Beach notice of possible constitutional violations similar to Mr. Gomez's and (2) that Miami Beach was aware of its training program's deficiencies in that area. *See Skop*, 485 F.3d at 1145. Mr. Gomez has alleged neither, rending his claim deficient.

Even taking all of Mr. Gomez's allegations as true, they only raise an inference that (15 years ago) Miami Beach knew that its officers had a rocky relationship with local residents and that police officers overreacted to minor disturbances, especially when Miami Beach became crowded. Yet nothing in the second amended complaint alleges that the police officers here overacted to a disturbance, minor or otherwise. As alleged in the second amended complaint, the police officers simply waylaid Mr. Gomez for no apparent reason. Even if, as Mr. Gomez argues, the allegations indicate that Miami Beach had notice that its police officers overreacted to minor disturbances, they do not show that Miami Beach had notice that its police officers attacked and detained bystanders for no reason whatsoever.

Disputing this conclusion, Mr. Gomez argues that he "has clearly alleged that the City was on notice of the need to supervise its officers regarding *all* areas of police conduct during periods of increased tourism" [D.E. 102 at 3–4]. This argument is unpersuasive.

 "[W]ithout notice of a need to train or supervise in a *particular* area, a municipality is not liable as a matter of law for any failure to train and supervise." *Gold,* 151 F.3d at 1350 (emphasis added). Thus, Mr. Gomez must allege that Miami Beach's training failed in the particular area from which his § 1983 action arises—namely, failure to train officers not to attack and detain bystanders without cause. And Mr. Gomez must allege more than "labels and conclusions" and allege factual allegations possessing "enough heft" to set forth "a plausible entitlement to relief." *See Fin. Sec.,* 500 F.3d at 1282. When combined, these principles demand that Mr. Gomez prove enough factual allegations showing that Miami Beach had notice of the particular type of violation that Mr. Gomez suffered. Mr. Gomez cannot rely on the conclusory allegation that Miami Beach knew of "general" police misconduct, which is what he attempts to do. Accordingly, Mr. Gomez has failed to meet the pleading standard under Federal Rule of Civil Procedure 12(b)(6).

Finally, I refuse to consider the depositions on which Mr. Gomez relies in his response and reject Mr. Gomez's argument that I should allow him to use discovery to develop his allegations. The latter argument miscalculates the role of complaints. A complaint needs sufficient factual allegations to raise a plaintiff's right to relief above the speculative level. *See Sinaltrainal v. Coca–Cola Co.,* 578 F.3d 1252, 1270 (11th Cir.2009). If the complaint does not do this, the plaintiff cannot move on to discovery. And the former argument ignores that, at the motion-to-dismiss stage, I must limit my consideration to the allegations in the complaint. *See GSW, Inc.,* 999 F.2d at 1510.[4]

---

4. Should discovery reveal the basis for a municipal liability claim, Mr. Gomez can seek to amend his complaint.

## IV. CONCLUSION

For the explained reasons, the City of Miami Beach's motion to dismiss the second amended complaint [D.E. 94] is DENIED IN PART AND GRANTED IN PART. Count XVII (assault and battery) remains. Counts XIX (malicious prosecution) and XVI (§ 1983) are dismissed.

## ORDER ON MOTION FOR CLARIFICATION

As requested by Miami Beach's emergency motion for clarification [D.E. 111], I clarify my order below.

Mr. Gomez cannot take discovery on his now-dismissed § 1983 municipal liability claim in hopes of stating a claim against Miami Beach. Miami Beach's interpretation of the order is the proper one. If during discovery relevant to Mr. Gomez's surviving claims he finds evidence showing a policy or custom by Miami Beach sufficient to raise a § 1983 municipal liability claim, then Mr. Gomez may move to amend his complaint and assert the claim. But Mr. Gomez's interpretation, which seeks to use discovery to see if he has a § 1983 claim against Miami Beach, is the same as the argument made in his response to Miami Beach's motion to dismiss. It is also the argument that I rejected in the order.

Because Mr. Gomez does not have a well-pleaded § 1983 claim against Miami Beach, any discovery requests focused on that claim are irrelevant and, therefore, outside the scope of discovery. See FED. R. CIV. P. 26(b)(1). Mr. Gomez may use discovery on his assault-and-battery claim and false-imprisonment claim against Miami Beach, but he cannot depose Miami Beach about its customs or policies where those customs or policies are irrelevant to those claims. And he cannot depose Miami Beach employees who have no knowledge about the incident or Officers Lozano, Chambers, and Blanco.

## ORDER ON MOTION FOR CLARIFICATION

As requested by Miami Beach's emergency motion for clarification [D.E. 111], I clarify my order below.

Mr. Gomez cannot take discovery on his now-dismissed § 1983 municipal liability claim in hopes of stating a claim against Miami Beach. Miami Beach's interpretation of the order is the proper one. If during discovery relevant to Mr. Gomez's surviving claims he finds evidence showing a policy or custom by Miami Beach sufficient to raise a § 1983 municipal liability claim, then Mr. Gomez may move to amend his complaint and assert the claim. But Mr. Gomez's interpretation, which seeks to use discovery to see if he has a § 1983 claim against Miami Beach, is the same as the argument made in his response to Miami Beach's motion to dismiss. It is also the argument that I rejected in the order.

Because Mr. Gomez does not have a well-pleaded § 1983 claim against Miami Beach, any discovery requests focused on that claim are irrelevant and, therefore, outside the scope of discovery. See FED. R. CIV. P. 26(b)(1). Mr. Gomez may use discovery on his assault-and-battery claim and false-imprisonment claim against Miami Beach, but he cannot depose Miami Beach about its customs or policies where those customs or policies are irrelevant to those claims. And he cannot depose Miami Beach employees who have no knowledge about the incident or Officers Lozano, Chambers, and Blanco.

DONE and ORDERED.