[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-11033
Non-Argument Calendar

_____

D.C. Docket No. 6:15-cv-01896-ACC-KRS

THOMAS ROBINSON,

Plaintiff-Appellee,

versus

COLE LAMBERT,
in his individual capacity,

Defendant-Appellant,

A. PETERKIN,
in his individual capacity, et al.,

Defendants.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(October 22, 2018)

Before TJOFLAT, JILL PRYOR, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Officer Cole Lambert appeals from the denial of his motion for summary judgment in a 42 U.S.C. § 1983 action against him for using excessive force. His appeal asks whether an officer is entitled to qualified immunity and statutory immunity when, after a pretrial detainee is subdued, the officer threatens the detainee with further injury and shoves him with enough force to break his arm. We hold that Officer Lambert is not entitled to qualified or statutory immunity, and affirm the District Court's order.

## I.

Because we resolve all issues of material fact in favor of the plaintiff on review of a motion for summary judgment, *Singletary v. Vargas*, 804 F.3d 1174, 1180 (11th Cir. 2015), we adopt Plaintiff Thomas Robinson's version of the facts. His version is as follows:

Robinson surrendered to the Volusia County Sheriff's Office on August 17, 2012 after learning of an outstanding warrant against him. He was arrested and placed in an intake cell. The next morning, Robinson was called to court for first appearance. He refused to go. After several failed attempts to persuade Robinson to go, someone on the corrections staff said: "Well, we're going to send you some motivation."

2

At that time, Officer Cole Lambert entered his cell along with Officers Peterkin and Washburn.  Robinson was sitting on his bunk with his hands at his side.  Lambert grabbed Robinson's left arm and told him to get up.  Robinson replied that he would not.  Lambert then pulled him off the bunk, slammed him against the wall, and put his left arm behind his back in a hammerlock hold.[1] Peterkin followed suit with his right arm.  Lambert and Peterkin began shoving Robinson back and forth.  Robinson was against the wall for approximately 30 to 45 seconds.  The officers had complete control of his arms, and Robinson was not resisting.

While he was pinned against the wall, Robinson told the officers that he had a spinal cord injury.[2]  Peterkin asked, "What's that supposed to mean?"  But Lambert responded, "Well, you're going to have another one."  He then shoved Robinson hard face-down onto a desk with Lambert holding his left arm and Peterkin his right.  Robinson had been on the desk for 20 to 30 seconds when Lambert gave him one last shove, and his right arm, which was being held by Peterkin in a hammerlock, popped.

Peterkin immediately let go and ran out of the cell, while Robinson cried out: "You broke my arm!"  Lambert said it probably was not broken and did not

---

[1] A hammerlock is a routine arm hold accomplished by twisting a person's arm behind his back and pulling the arm up towards the shoulder.

[2] Robinson was in a car accident in 2002 where he sustained a number of serious injuries. He continues to suffer from physical disabilities resulting from the accident.

release Robinson until Peterkin affirmed that it was.  Lambert then picked

Robinson up off the floor and escorted him to medical.  X-rays revealed a severe

spiral fracture of the right humerus that required surgery.  Robinson underwent

reconstructive surgery that included putting a steel plate and 16 screws in his arm.

Robinson filed a complaint against Lambert asserting an excessive force

claim under 42 U.S.C. § 1983 and an assault and battery claim under Florida state

law. [3]  Lambert moved for summary judgment, asserting qualified immunity under

federal law and statutory immunity under state law.  The District Court denied his

motion, and Lambert appeals.

## II.

We review *de novo* the District Court's "disposition of a summary judgment

motion based on qualified immunity," resolving all issues of fact in favor of the

non-moving party. *Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 2002).  "We

then answer the legal question of whether the defendant is entitled to qualified

immunity under that version of the facts." *Id.* (citations and alterations omitted).

Qualified immunity protects government officials if "their conduct does not

violate clearly established statutory or constitutional rights of which a reasonable

person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

"The purpose of this immunity is to allow government officials to carry out their

---

[3] Robinson also filed other claims against other defendants.  These claims were dismissed and are not at issue on this appeal.

4

discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Dang ex rel. Dang v. Sheriff, Seminole Cty. Fla.*, 871 F.3d 1272, 1278–79 (11th Cir. 2017) (citations and alterations omitted).

To receive qualified immunity, the officer must show that he acted within his discretionary authority. *Id.* at 1279. Here, it is undisputed that Lambert acted within his discretionary authority. The burden then shifts to the plaintiff to prove 1) that the officer violated a constitution right, and 2) that the right was clearly established at the time of the violation. *See Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1291 (11th Cir. 2009).[4]

## A.

We begin with whether the facts alleged show a violation of a constitutional right. Robinson claims that Lambert's use of excessive force violated his substantive due process rights under the Fourteenth Amendment. For an excessive force claim, a pretrial detainee must show that the force used against him was objectively unreasonable. *Kingsley v. Hendrickson*, 135 S.Ct. 2466, 2473 (2015). This is a fact-specific inquiry based on "the perspective of a reasonable officer on

---

[4] This two-step test is not mandatory, and can be performed in either order. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) ("While the [two-step test] is often appropriate, it should no longer be regarded as mandatory."). But it is "often beneficial" because it "promotes the development of constitutional precedent." *Id.* We see no reason to depart from the typical procedure in this case.

the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight," taking into account the legitimate n eed of jail officials to maintain order and discipline in their facilities. *Id.* Courts consider the following non-exhaustive factors in determining the reasonableness of force:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id*.

Here, Officer Lambert was warranted in using force given Robinson's repeated refusal to obey commands to attend his first appearance. *See Danley v. Allen*, 540 F.3d 1298, 1307 (11th Cir. 2008) (finding use of some force justified when an inmate twice refused an order to return to his cell). And, at least initially, the amount of force used here—pulling Robinson from his bunk and slamming him against the wall—is consistent with what this Court has approved in the past. *See Bennett v. Parker*, 898 F.2d 1530, 1533 (11th Cir. 1990) (holding that grabbing an inmate by the throat and pushing him against the bars of his cell was not excessive after the inmate failed to follow instructions and disrupted prison procedures). Thus, the initial use of force in pulling Robinson from his bunk, slamming him against the wall, and placing him in a hammerlock was reasonable.

6

But the use of force is objectively unreasonable when it continues past the need for such force. *See Danley*, 540 F.3d at 1309 ("When jailers continue to use substantial force against a prisoner who has clearly stopped resisting—whether because he has decided to become compliant, he has been subdued, or he is otherwise incapacitated—that use of force is excessive."). Robinson was subdued after Lambert and Peterkin pinned him against the wall for 30 to 45 seconds with both hands behind his back in a hammerlock. He was not resisting and the officers had complete control over his arms. There was no need to push him onto the desk and then shove him with enough force to break his arm. *See id.* ("Once a prisoner has stopped resisting there is no longer a need for force, so the use of force thereafter is disproportionate to the need."). For that reason, the use of force became excessive once there was no longer any need for it.

The extent of Robinson's injuries also suggests the amount of force used was objectively unreasonable. Robinson suffered a severe spiral fracture that required reconstructive surgery. These injuries suggest Lambert used more force than was reasonably needed to subdue a pretrial detainee who refused to go to court but was not physically resisting. It is true that this factor is not dispositive if the extent of the injuries was not foreseeable. *See Cockrell v. Sparks*, 510 F.3d 1307, 1311–12 (11th Cir. 2007) ("Although in this case the extent of the injury was relatively extensive, this factor alone is not dispositive. There is no way [the

7

officer] could have foreseen that a simple push would result in as much injury as [the detainee] unfortunately suffered."). And Lambert points out that a doctor discovered preexisting structural weakness in Robinson's arm due to reduced bone density, which rendered it more vulnerable to a fracture. But we look to what the officer knew or reasonably should have known at the time of the incident. *See Lee*, 284 F.3d at 1200. While Lambert had no way of knowing of the preexisting structural weakness in Robinson's arm, Robinson did warn Lambert that he had a spinal cord injury. This knowledge should have put Lambert on notice that Robinson was more susceptible to injury from being pinned against a desk and then shoved with his arms behind his back. *Cf. Rodriguez v. Farrell*, 280 F.3d 1341, 1352–53 (11th Cir. 2002) (finding that officer did not use excessive force in handcuffing an arrestee where he had no knowledge or reason to know of the arrestee's recent elbow surgery even though it caused severe injury). Because Lambert had notice of a preexisting condition that put Robinson at greater risk of injury from the use of force, the relatively serious extent of the injuries is relevant.

Furthermore, Lambert did not temper or limit the amount of force used. While the fact that Lambert promptly sought medical care for Robinson "tempers the severity of the forceful response," *Cockrell*, 510 F.3d at 1312 (citations and alterations omitted), our analysis does not end there. We find it far more significant that after Lambert was told Robinson had a spinal cord injury, he

8

responded, "Well, you're going to have another one," and escalated the use of force.  Lambert's threat to inflict further injury belies any notion that he tempered the use of force.[5]

The remaining factors also point to the unreasonableness of the force used. The severity of the security problem and the threat perceived by the officers were minimal.  Robinson refused to attend a court hearing—that was the extent of the security problem.  With all due respect to prison officials' need to maintain order, this is hardly a dire threat.  He was not being detained for a violent crime, nor is there any evidence that his behavior up to that point indicated a violent or unruly disposition.  When the officers entered the cell, Robinson was sitting on his bunk with his arms to his side.  At no point did he physically resist.

Under Robinson's version of the facts, we find that Lambert violated his constitutional right to be free from the use of excessive force.  Lambert continued to use significant force after there was no longer a need for it, and he threatened to injure Robinson.  The use of force resulted in a serious injury, the risk of which Lambert should have been aware.  This was objectively unreasonable in light of the minimal security threat and Robinson's lack of physical resistance.

---

[5] Threats "can be relevant to what is constitutionally reasonable . . . as part of a totality of circumstances." *Bozeman v. Orum*, 422 F.3d 1265, 1271 n.11 (11th Cir. 2005), *overruled on other grounds by Kingsley*, 135 S.Ct. 2466; *see also Evans v. Stephens*, 407 F.3d 1272, 1281–82 & n.12 (11th Cir. 2005).  While the use of threatening language can be an appropriate tool for prison officials to maintain order, this Court has drawn a distinction between threats evidencing "a desire to restore order" and those indicating "a wish to sadistically cause harm."  *See Cockrell*, 510 F.3d at 1312.  Lambert's threat falls in the latter category.

**B.**

Next, we consider whether the violation of Robinson's constitutional right was clearly established.  To determine if a right is clearly established, the "dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001), *overruled on other grounds by Pearson*, 555 U.S. 223.  The purpose of this requirement is to provide officers with notice that their conduct is unlawful.  *See id.* at 206.  For that reason, the notice "must be appropriately specific considering the context of the case." *Pace v. Capobianco*, 283 F.3d 1275, 1283 (11th Cir. 2002).

This Court has articulated three ways by which a right may be clearly established: "(1) case law with indistinguishable facts . . . ; (2) a broad statement of principle within the Constitution, statute, or case law . . . ; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Lewis*, 561 F.3d at 1291–92.[6]  Thus, it is not necessary for a case to be "directly on point." *See White v. Pauly*, 137 S.Ct. 548, 551 (2017) (quotation omitted).  But the "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* (quotation omitted).  For a broad

---

[6] We consider only "binding precedent—cases from the United States Supreme Court, the Eleventh Circuit, and the highest court of the state under which the claim arose—to determine whether the right in question was clearly established at the time of the violation." *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011).

principle to clearly establish the law in a specific case, "it must do so with obvious clarity to the point that every objectively reasonable government official facing the circumstances would know that the official's conduct did violate federal law when the official acted." *Coffin*, 642 F.3d at 1015 (quotation omitted). In this case, there is no binding case law with indistinguishable facts, leaving us to decide whether Lambert's conduct violated Robinson's constitutional rights as a matter of obvious clarity.

At the time of the alleged conduct, the standard for excessive force was "whether that force was applied in a good faith effort to maintain or restore discipline or maliciously or sadistically for the very purpose of causing harm." *Bozeman*, 422 F.3d at 1271.[7] But the factors used to assess whether force was excessive were the same. *See Cockrell*, 510 F.3d at 1311.

It is well established in our case law that an officer cannot continue to use force after there is no longer a need for it. *See Williams v. Burton*, 943 F.2d 1572, 1576 (11th Cir. 1991) ("The basic legal principle is that once the necessity for the application of force ceases, any continued use of harmful force can be a violation of the Eighth and Fourteenth Amendments, and any abuse directed at the prisoner after he terminates his resistance to authority is an Eighth Amendment violation."); *see also Ort v. White*, 813 F.2d 318, 327 (11th Cir. 1987) ("A fourteenth

---

[7] The Supreme Court in *Kingsley* shifted from this subjective standard to the objectively reasonable test outlined in part II.A. *See* 135 S.Ct. at 2473.

11

amendment violation occurs in this context where prison officers continue to employ force or other coercive measures after the necessity for such coercive action has ceased.").  And we have made clear that if a detainee stops resisting, the use of force is no longer justified.  *See Danley*, 540 F.3d at 1309 ("When jailers continue to use substantial force against a prisoner who has clearly stopped resisting—whether because he has decided to become compliant, he has been subdued, or he is otherwise incapacitated—that use of force is excessive."); *see also Bozeman*, 422 F.3d at 1272 ("On these assumed facts—especially given the Officers' continued use of force in a manner that was severe enough to render [the detainee], at the very least, unconscious *after* [the detainee] had surrendered—we conclude that one could draw a reasonable inference that the Officers' use of force was for the very purpose of causing harm: excessive force.") (emphasis in original).

We find that this well-established principle applies to this case with obvious clarity.  Based on Robinson's version of the facts, he was pinned against the wall with his arms behind his back while Officers Lambert and Peterkin pushed him back and forth for approximately 30 to 45 seconds.  At no point during this interaction did he resist.  After Robinson had been pinned against the wall for at least 30 seconds without resisting, any objectively reasonable officer would know that Robinson had been subdued.  The continued use of force became unnecessary

12

and unjustified.  But Lambert proceeded to push Robinson face-down on the desk, and then shove him with enough force to break his arm.  Based on then current law, this gratuitous display of force allows us to "draw a reasonable inference" that Lambert acted with "the very purpose of causing harm" and was consequently excessive.  *See Bozeman*, 422 F.3d at 1272.

It was also well established that "threatening comments are circumstantial evidence of mental state that can be considered in determining the intent underlying the use of force."  *See Cockrell*, 510 F.3d at 1312.  And Lambert's response to Robinson's warning that he had a spinal cord injury—"Well, you're going to have another one"—evidences his sadistic intent to cause injury. *Compare id.* (explaining that officer's threat to "shut the hell up" indicated "a desire to restore order, not a wish to sadistically cause harm"), *with Bozeman*, 422 F.3d at 1271 (using threats to "kick his ass" and telling the inmate he was in for a "rude awakening" as evidence of bad faith).[8]

We conclude that Lambert's use of force was a clearly established violation of Robinson's constitutional right.  The law provided that the continued use of force after there is no longer a need for it is excessive.  And the law provided that threatening to cause further injury indicates sadistic intent.  Coupling Lambert's continued use of force after Robinson was subdued with his threat to inflict further

---

[8] *See also supra* n.5.

injury, it is plain as a matter of obvious clarity that Lambert used force "maliciously and sadistically with the very purpose of causing harm." *Bozeman*, 422 F.3d at 1271. Thus, he is not entitled to qualified immunity.

## III.

Next, we turn to Lambert's appeal that the District Court erred in denying him statutory immunity under Florida Statute § 768.28(9)(a) for the assault and battery claim. We review *de novo* the District Court's denial of summary judgment based on statutory immunity under Florida Statute § 768.28(9)(a). *Keck v. Eminisor*, 104 So. 3d 359, 366–67 (Fla. 2012); *see also Cummings v. DeKalb Cty.*, 24 F.3d 1349, 1353 (11th Cir. 1994). Again, we view the facts in the light most favorable to the plaintiff. *Singletary*, 804 F.3d at 1180.

Robinson alleges that Lambert committed assault and battery. In Florida, a battery is "the infliction of a harmful or offensive contact upon another with the intent to cause such contact or the apprehension that such contact is imminent." *Quilling v. Price*, 894 So. 2d 1061, 1063 (Fla. Dist. Ct. App. 2005). "Assault is defined as an intentional, unlawful offer of corporal injury to another by force, or force unlawfully directed toward another under such circumstances as to create a fear of imminent peril, coupled with the apparent present ability to effectuate the attempt." *Lay v. Kremer*, 411 So. 2d 1347, 1349 (Fla. Dist. Ct. App. 1982). But

14

Lambert's appeal asserts that he is entitled to statutory immunity. The tort immunity statute reads:

> No officer, employee, or agent of the state or of any of its subdivisions shall be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, *unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.*

Fla. Stat. § 768.28(9)(a) (2017) (emphasis added).

The relevant inquiry for statutory immunity is "whether a reasonable trier of fact could possibly conclude that the conduct was willful and wanton, or would otherwise fall within the exceptions to the statute." *Furtado v. Yun Chung Law*, 51 So. 3d 1269, 1277 (Fla. Dist. Ct. App. 2011); *see also Thompson v. Douds*, 852 So. 2d 299, 309–10 (Fla. Dist. Ct. App. 2003) (holding that summary judgment was improper where there were genuine issues of material fact as to whether officers acted with wanton and willful disregard for human rights).

For the reasons discussed in part II.B., we find that there is a genuine issue of material fact as to whether Lambert acted with a malicious purpose. If Lambert acted "maliciously or sadistically for the very purpose of causing harm," *Bozeman*, 422 F.3d at 1271, then it must be true that he acted with a malicious purpose. Therefore, Lambert is not entitled to statutory immunity.

15

The District Court's dismissal of Lambert's motion for summary judgment is AFFIRMED.