John E. Ott, Chief United States Magistrate Judge
In this civil rights action brought pursuant to 42 U.S.C. §§ 1983 and 1985, Plaintiff Aubrey Williams ("Plaintiff") claims that his constitutional rights were violated when he was shot without justification by a police officer employed by the City of Birmingham (the "City") and when he was thereafter falsely arrested and maliciously prosecuted for the attempted murder of the officer. (Doc.[1] 50, Amended Complaint).
*1329 The defendants include the officer who shot Plaintiff, Daniel Aguirre; Aguirre's partner, Richard Haluska; the City itself; its Chief of Police, A.C. Roper; and numerous other City police officers and officials (collectively "Defendants"). The cause now comes to be heard on three pending motions: (1) Defendants' objections to Plaintiff's notice of intent to serve subpoenas and motion to quash such subpoenas, if issued (Doc. 58); (2) Plaintiff's motion to modify the Rule 16(b) scheduling order by extending discovery and other deadlines by 120 days (Doc. 60); and (3) Plaintiff's motion for an extension of time to file rebuttal experts by at least 60 days. (Doc. 66). Upon consideration, the court concludes that Defendants' objections to the subpoenas are meritorious in part and that the scope of the subpoenas' requests is due to be modified. The court will deny Plaintiff's motion to extend all discovery generally by 120 days. However, the court will order that discovery be reopened for a total of 75 days for the limited purpose of allowing rebuttal expert discovery into alleged alterations or enhancements of video recordings that Defendants have proposed to offer at trial or to use as a basis for opinions by their experts.
I.
Rule 45 of the Federal Rules of Civil Procedure authorizes a court to issue a subpoena at the request of a party to require a non-party to produce for inspection and copying designated documents, electronically stored information, or tangible things in the possession, custody, or control of the non-party. The scope of permissible discovery with respect to a Rule 45 subpoena is that which is set forth in Fed. R. Civ. P. 26(b)(1), which provides that "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case...." See Greater Birmingham Ministries v. Merrill , 2017 WL 2903197, at *2 (N.D. Ala. July 7, 2017). On timely motion, the court has the authority under Rule 45 to quash or modify a subpoena "that requires disclosure of privileged or other protected matter, if no exception or waiver applies. Rule 45(d)(3)(A)(iii), Fed. R. Civ. P. Further, under Rule 26(c), a party may move for a protective order that forbids inquiry or that limits the scope of discovery as to certain matters. Rule 26(c)(1)(D), Fed. R. Civ. P.
On September 21, 2017, Plaintiff served a notice of his intent to serve respective Rule 45 subpoenas on two non-party Fraternal Order of Police ("FOP") organizations: the Alabama State FOP and the Birmingham FOP Lodge 1.[2] (See Docs. 58, 58-1, 58-2). Each subpoena instructs its recipient to produce the same things, to wit:
1. Produce copies of all documents relating to each incidence wherein an FOP attorney and/or representative has appeared at a crime scene, Internal Affairs interview, personnel hearing, disciplinary *1330 hearing for any City of Birmingham police officer during the ten year period prior to April 24, 2014 [the date Williams was shot].
2. Produce documents reflecting the name, referral, and assignment of any attorney retained by the FOP on behalf of Officers Aguirre and/or Haluska relating to the police shooting of Aubrey Williams on April 24, 2014.
3. Produce any and all surveys, audits, data, and/or reports in your possession relating to the following:
a. incidents wherein any Birmingham Police Officer arrested any suspect on misdemeanor or felony charges wherein the police officer claimed to be the victim of the crime charged (i.e., assault, menacing, resisting arrest, attempted murder, etc.); and
b. incidents wherein Birmingham police officers were alleged to have falsely arrested, charged, or documented actions by suspects during the ten year period prior to April 24, 2014.
(See Docs. 58-1, 58-2). Defendants have objected to the issuance of both subpoenas and have moved to quash them, if issued, on several grounds. (Doc. 58). Plaintiff has filed an opposition (Doc. 64), to which Defendants have replied. (Doc. 65). The parties' arguments on the motion are addressed below.
A.
Defendants first argue that the subpoenas' requests for FOP documentation on prior incidents involving the City's police officers are "overly broad in time and scope" (Doc. 65 at 3). Defendants do not dispute that, as a general proposition, knowledge attributable to the City with respect to similar incidents of misconduct may be relevant to Plaintiff's § 1983 claims alleging a failure to train and a failure to supervise, which are asserted in Count Seven of the Amended Complaint. That is so because to hold a municipality liable under § 1983 for a failure to train or supervise its employees, such failure must rise to the level of "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." City of Canton, Ohio v. Harris , 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) ; see also Gold , 151 F.3d at 1350. And such deliberate indifference may be established by evidence of "a pattern of similar constitutional violations by untrained employees"; indeed, such proof is typically necessary for a plaintiff to prevail. See Connick v. Thompson , 563 U.S. 51, 62, 131 S.Ct. 1350, 179 L.Ed.2d 417 (2011); Board of Comm'rs of Bryan Cty. v. Brown , 520 U.S. 397, 410, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) ; see also Cook v. Sheriff of Monroe Cty., Fla. , 402 F.3d 1092, 1105 (11th Cir. 2005) ; Gold v. City of Miami , 151 F.3d 1346, 1350 (11th Cir. 1998). Defendants emphasize, however, citing Mercado v. City of Orlando , 407 F.3d 1152 (11th Cir. 2005), that such incidents, to be relevant, must evidence employee misconduct arising out of facts that are "substantially similar to the case at hand." Id. at 1162. Defendants further contend, relying on Brooks v. Scheib , 813 F.2d 1191, 1193 (11th Cir. 1987), that for incident complaints to establish knowledge of a need for further training on the part of the City, Plaintiff must also show that such complaints were, in fact, valid. Defendants thus suggest that while Plaintiff might properly "request complaints involving the use of excessive force via shootings, which were sustained, against Officer Aguirre," Defendants argue that Plaintiff's subpoenas *1331 to the FOPs instead "request broad, irrelevant categories of documents." (Doc. 58 at 5).
Answering Defendants' relevancy objection on the merits[3] , Plaintiff insists that all his subpoena requests for documentation on prior incidents are within the scope of discovery permitted under Rule 26(b)(1). (Doc. 64 at 2-5). He argues that Defendants' reliance on Mercado and Brooks is misplaced because those decisions address whether a plaintiff had presented sufficient admissible evidence of prior similar incidents to create a disputed issue of fact at summary judgment with respect to a local government's awareness of a need for further training, not whether or to what extent the plaintiff was entitled to conduct discovery into prior incidents. (Id. at 3). Plaintiff also seems to take the position that prior incidents and complaints are relevant to the City's knowledge so long as they implicate the use of "excessive force" by the City's police of any sort, whether or not they involved a shooting. In support, he identifies six opinions from this court holding that plaintiffs had presented sufficient evidence at summary judgment to indicate that City police officers had applied unconstitutionally excessive force through various different means. See Nevels v. City of Birmingham , 2015 WL 6746780 (N.D. Ala. Nov. 5, 2015) (physical assault and use of mace); J.W. v. Birmingham Bd. of Educ. , 143 F.Supp.3d 1118 (N.D. Ala. 2015) (use of chemical spray by school resource police officer on restrained students); Thompson v. City of Birmingham , 5 F.Supp.3d 1304 (N.D. Ala. 2014) (physical assault); Blanchard v. City of Birmingham , 2012 WL 5426228 (N.D. Ala. Nov. 2, 2012), on reconsideration , 2013 WL 169285 (N.D. Ala. Jan. 15, 2013) (physical assault); McElroy v. City of Birmingham , 903 F.Supp.2d 1228 (N.D. Ala. 2012) (shooting). "All in all," Plaintiff concludes, "[the] requests to the FOP[s] are narrowly tailored, the relevancy of the requested materials is high, and the question of admissibility can be resolved on a later day." (Id. at 4).
As a threshold matter, the court would recognize that Plaintiff's subpoenas are not at all limited to seeking information on incidents that are even arguably "similar" under any commonly-understood definition of that word. Plaintiff says that his subpoena requests are "narrowly tailored" to obtain materials "the relevancy of [which] is high." (Doc. 64 at 4). To be *1332 frank, however, that characterization could hardly be less apt. In particular, the initial request of each subpoena asks the target FOP to produce "all documents relating to each incidence wherein [an FOP] attorney and/or representative has appeared at a crime scene, Internal Affairs interview, personnel hearing, disciplinary hearing for any City of Birmingham police officer during the ten year period prior to April 24, 2014." (Doc. 58-1 at 5; Doc. 58-2 at 5). On its face, that request might encompass all documentation for every incident in which any FOP attorney or representative was involved in any material capacity with any City police officer, in connection with any allegation of misconduct regardless of its nature or severity. Thus, as Defendants submit, the request would comfortably encompass documents on charges of malfeasance by officers as far afield from Plaintiff's claims as illegal drug use, domestic violence, and sexual harassment to insubordination and working unauthorized overtime. Plaintiff offers no explanation or authority supporting why he might be entitled to discovery approaching that breadth.
Likewise, another one of Plaintiff's subpoena requests asks for FOP documentation on all "incidents" in which "any [City] Police Officer arrested any suspect on misdemeanor or felony charges wherein the police officer claimed to be the victim of the crime charged," as for "assault, menacing, resisting arrest, attempted murder, etc." (Doc. 58-1 at 5; Doc. 58-2 at 5). That request also goes far beyond the scope of Plaintiff's claims and seeks irrelevant information. A prior incident may be relevant to a municipality's knowledge of the need for further training and supervision only insofar as the incident gave rise to a similar constitutional violation. See Weiland v. Palm Beach Cty. Sheriff's Office , 792 F.3d 1313, 1328 n. 21 (11th Cir. 2015) (allegations that there had been "thousands of contacts" between sheriff's deputies and mentally ill people and "numerous police shootings" of the mentally ill in the jurisdiction could not give rise to knowledge that existing training was inadequate absent further allegations that such shootings gave rise to "similar constitutional violations"); Whitaker v. Miami-Dade Cty. , 126 F.Supp.3d 1313, 1324 (S.D. Fla. 2015) (allegations that there had been four prior police shooting incidents over a year period did not support that the defendant county was on notice that its existing training was inadequate, insofar as the plaintiffs had not alleged "that these shootings were deemed unjustified, unconstitutional, or were anything other than legitimate, self-defense shootings."). However, the fact that an officer made an arrest based on a claim that he was himself the target of threatened or actual physical force or resistance has no tendency at all to suggest wrongdoing by the officer, never mind the existence of a constitutional violation. Thus, a broad request for all such "incidents" is improper. See Joseph v. Las Vegas Metro. Police Dep't , 2010 WL 5136010, at *2 (D. Nev. Dec. 10, 2010) (disallowing discovery into "any and all shootings" by all department officers on the ground that it "far exceed[ed] the scope" of the plaintiff's claims alleging racial profiling and excessive force and "would necessarily include information about wholly unrelated matters, such as accidental shootings").
Based on the above, the court concludes that it is necessary to modify the scope of the subpoenas to the extent they seek documentation in each FOP's possession on prior incidents and complaints against *1333 City police officers. The question is how to modify the subpoenas and to what extent. At the outset, the court agrees with Defendants that, under Mercado , for other incidents and complaints to be relevant in the context of municipal liability under § 1983 for a failure to train or supervise, they must involve "factual situations that are substantially similar to the case at hand." 407 F.3d at 1162. Plaintiff is correct that the Eleventh Circuit's discussion of similar incidents in Mercado addressed whether the record contained sufficient evidence to create an issue of fact at summary judgment with respect to the municipality's knowledge of the need for additional training. See id. As such, that case does not purport to delineate the scope of evidence of prior incidents that is even admissible at trial, never mind subject to pretrial discovery, which might at least in theory be somewhat broader. See Rule 26(b)(1), Fed. R. Civ. P. ("[I]nformation ... need not be admissible in evidence to be discoverable."). Nonetheless, Mercado is instructive on the scope of discovery because the decision bears on the nature of prior incidents that allow a plaintiff to establish an awareness of a need for more training, thereby suggesting what evidence of prior incidents is, in fact, relevant to the Plaintiff's claims. Plaintiff says that "question[s] of admissibility can be resolved on a later day." (Doc. 64 at 4). Ultimately, however, he fails to explain and the court does not otherwise discern why evidence of prior incidents that are not at least arguably similar to Plaintiff's case would be relevant for purposes of either trial or discovery. See Barrett v. City of New York , 237 F.R.D. 39, 40 (E.D.N.Y. 2006) (holding in civil rights suit alleging false arrest, illegal strip search, and fabricated evidence that complaints concerning defendant police officers submitted to civilian review board containing allegations of excessive force or "discourtesy" of officers only were "wholly unrelated" to the plaintiff's claims and thus not subject to discovery).
The parties also have quite different ideas about what prior incidents might qualify as "similar" enough to be relevant and discoverable, although the court does not find either side's conception to be entirely correct. In particular, with regard to Plaintiff's § 1983 training and supervision claims associated with his being shot, Defendants suggest a very narrow approach that would treat prior incidents as relevant and discoverable only if they involved a complaint of unconstitutionally excessive force arising out of a shooting by the same officer who shot Plaintiff, i.e. , Aguirre. By contrast, Plaintiff seems to assume in his brief that discovery is proper as to prior incidents involving any allegation of excessive force, regardless of the means or instrumentality employed (e.g. , use of a firearm, Taser, night stick, pepper spray, handcuffs, choke-hold, punch, etc.). Plaintiff also says he is entitled to discovery into such incidents involving all City police officers, not just Aguirre. As explained below, the court agrees with Defendants that information on prior incidents is discoverable only where there is an allegation that an officer-involved shooting violated a citizen's constitutional rights, but the court sides with Plaintiff on the issue of whether such incidents are relevant if they involved City police officers other than Aguirre or any other individual officer named as a defendant.
The Supreme Court has recognized that "the identified deficiency in a city's training program must be closely related to the ultimate injury." City of Canton , 489 U.S. at 391, 109 S.Ct. 1197. "Without notice that a course of training is *1334 deficient in a particular respect , decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." Connick , 563 U.S. at 63, 131 S.Ct. 1350 (emphasis added). Thus, "[p]rior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question." Estate of Davis ex rel. McCully v. City of N. Richland Hills , 406 F.3d 375, 383 (5th Cir. 2005). Indeed, courts demand a high degree of factual similarity between prior incidents and the episode involving the plaintiff for the former to be relevant to § 1983 liability for an alleged failure to train or supervise. The Supreme Court's decision in Connick illustrates the principle. In that action, the plaintiff, Thompson, brought a § 1983 claim against a local district attorney's office alleging that it had failed to train its prosecutors properly on their obligation under Brady v. Maryland , 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), to disclose evidence favorable to the accused. Connick , 563 U.S. at 54, 131 S.Ct. 1350. That lack of training, Thompson contended, had resulted in the prosecutors in his case failing to turn over an exculpatory crime lab blood analysis report. Id. In support of that claim, Thompson alluded to a pattern of similar violations based on evidence that, in the ten years preceding his case, four convictions obtained by the defendant's office had been reversed for Brady violations. Id. at 62, 131 S.Ct. 1350. The Supreme Court held, however, that because none of the other four cases "involved failure to disclose blood evidence, a crime lab report, or physical or scientific evidence of any kind," those incidents were "not similar" to Thompson's case and could not have put the defendant on notice that the office's " Brady training was inadequate with respect to the sort of Brady violation at issue here. " Id. (emphasis added); see also Gianonne v. City of Naperville , 2017 WL 2569603, at *2 (N.D. Ill. June 13, 2017) (recognizing that Connick requires "a pattern of highly similar prior constitutional violations"); Olaniyi v. District of Columbia , 876 F.Supp.2d 39, 50 (D.D.C. 2012) (applying Connick 's rationale to hold that past alleged deficiencies in medical services at the D.C. Jail that were unrelated to the unconstitutional forced medication of inmates could not have put the District on notice of the need for training to avoid the particular constitutional violation at issue); Bassett v. City of Burbank , 2014 WL 12573410, at *4 (C.D. Cal. Nov. 5, 2014) (" Connick indicates that the pattern cannot consist of generic misconduct; rather, it must be a pattern of incidents that closely resemble the underlying misconduct in a particular case.").
Based on such reasoning, courts faced with § 1983 claims alleging that a lack of proper training or supervision led to a police officer's unconstitutional use of excessive force have likewise required a high level of factual similarity in the means or instrumentality of force used in prior incidents and in the plaintiff's own case. See Stephens v. City of Tarrant , 2017 WL 34829, at *7 (N.D. Ala. Jan. 4, 2017) (prior incidents involving "excessive force and violent behavior" generally by police did not support that municipality was on notice of need for additional training on Taser use because "excessive force, whatever it may have been, could have involved any number of actions-shooting, punching, placing someone in a choke-hold, etc."); White v. City of Birmingham , 96 F.Supp.3d 1260, 1283-84 (N.D. Ala. 2015) (two incidents in which an officer allegedly struck a suspect without justification and the certification of *1335 a class-action complaint alleging excessive force in the use of pepper spray were "too different" from the case of the plaintiff who had been shot, because none of the other incidents "involve claims of lethal force involving firearms"); Thomas v. City of Jacksonville , 2015 WL 13284967, at *28 (M.D. Fla. Feb. 17, 2015) (five incidents of prior Taser usage insufficient to put municipality on notice of the need for additional officer training with regard to "use of deadly force with firearms"); cf. Pozdol v. City of Miami , 996 F.Supp.2d 1290, 1299-1300 (S.D. Fla. 2014) (concluding that, in the context of § 1983 action brought by suspect shot and killed by police, multiple incidents of "officer-involved shootings" that "appear[ed] unjustified," as disclosed in Department of Justice report, supported that defendant supervisor was on notice of "a need to re-train officers in the proper use of deadly force"); Roberts v. City of Shreveport , 397 F.3d 287, 294 (5th Cir. 2005) (stating that evidence of multiple "past incidents in which [the defendant officer] brandished and pointed his firearm toward unarmed African-Americans while making routine traffic stops ... proves nothing about [his propensity to] actual[ly] use ... deadly force in the much different context of this case," in which he was "confronted with a speeding vehicle while standing in the street directing traffic."). The court concludes, therefore, that the subpoenas' requests in this area are due to be modified so as to be limited to documents related to incidents involving the discharge of a firearm by a City police officer against a citizen accompanied by a complaint or allegation of unconstitutionally excessive force. Cf. Joseph , 2010 WL 5136010, at *3 (limiting plaintiff's discovery to identification by name other § 1983 lawsuits involving allegations of excessive force based on a shooting by any officer of municipality's police department).
Plaintiff has also raised claims alleging that Defendants are liable under § 1983 on the theory that his constitutional rights were further violated both before and after he was shot. More specifically, Plaintiff asserts that, before being shot, he had already been illegally detained and seized without probable cause or reasonable suspicion. (See Amend. Compl., Count One). And after the shooting, Plaintiff contends, he was wrongfully arrested and prosecuted as a result of false allegations concocted at the scene by Officers Aguirre and Haluska, and perpetuated thereafter by them and others within the police department, to the effect that Plaintiff had drawn a gun on Aguirre and Haluska and attempted to murder them. (See Amended Compl., Counts Three, Four, and Five). Plaintiff's § 1983 failure-to-train and failure-to-supervise claims against the City also relate to those alleged pre-and post-shooting constitutional violations. (See id. , Count Seven). As such, documentation in the possession of the FOPs would be relevant insofar as it relates to prior incidents and complaints involving allegations of "substantially similar" constitutional violations. Mercado , 407 F.3d at 1162. In this context, the court concludes, incidents would be relevant if they involved allegations that a City police officer violated the Fourth Amendment rights of a pedestrian by conducting a stop without reasonable suspicion or by making an arrest without probable cause. See Gomez v. Lozano , 759 F.Supp.2d 1335, 1339 (S.D. Fla. 2011) (recognizing that, to proceed on § 1983 claims against municipality alleging failure of supervision and training, the plaintiff was required to allege facts showing "that a pattern of police officers detaining and roughing innocent pedestrians gave [the municipality] notice of possible constitutional violations similar to [the plaintiff's]
*1336 "). Incidents would also be relevant, the court finds, if they involved an allegation that a City police officer deliberately fabricated inculpatory testimony or evidence or deliberately destroyed or concealed exculpatory evidence and thereby caused a citizen to be arrested, imprisoned, and/or prosecuted. See Petkovich v. City of Montgomery, Ala. , 2015 WL 263391, at *4 (M.D. Ala. Jan. 21, 2015) ; Holmes v. Slay , 99 F.Supp.3d 978, 989 (E.D. Mo. 2015).
Turning to Defendants' suggestion that only incidents and complaints involving the officers in Plaintiff's own case might be relevant to his claims, the court concludes that Defendants are simply wrong. Indeed, they cite no authority to support such a position. To be sure, "a given officer's disciplinary history may be probative of whether it was foreseeable to the municipality that the officer would engage in misconduct yet again." Outlaw v. City of Hartford , 884 F.3d 351, 380 (2d Cir. 2018). But by its nature, municipal liability under § 1983 for failure to train or supervise "will often turn on evidence concerning victims other than the plaintiffs and alleged misfeasors other than the individual defendants." Id. That is, a pattern of similar incidents involving other City police officers would be relevant to show that the City was aware of deficiencies in its existing policies and practices in a particular area and the need to implement additional training or supervision protocols. See Gold , 151 F.3d at 1350. Therefore, Defendants' relevancy objection to the subpoenas is not well taken to the extent Defendants seek to limit discovery only to prior incidents and complaints involving Aguirre, Haluska, or other individual officers named as defendants in this action.
Next, the parties clash over whether the discoverability of prior incidents depends upon whether an associated complaint against the accused officer was "sustained" by some reviewing authority. On that score, Defendants are correct that the Eleventh Circuit has indicated that a local government might be put on notice of inadequacies in its existing training and supervision in a particular area only where policymakers are aware of a pattern of actual constitutional violations by governmental employees, not merely unsubstantiated complaints. See Weiland , 792 F.3d at 1328 n. 20 ; Gold , 151 F.3d at 1351 ; Brooks , 813 F.2d at 1193. Nevertheless, the court concludes it is appropriate to allow Plaintiff to conduct discovery into substantially similar incidents even if a complaint thereupon was not necessarily "sustained." Again, even under the 2015 amendment to Rule 26(b)(1), "[i]nformation ... need not be admissible in evidence to be discoverable." Rule 26(b)(1), Fed. R. Civ. P. Further, it is not at all clear from the record exactly what reviewing authority would have been making determinations regarding the validity of any complaints, whether and to what degree any investigation was done independently, or what procedures or standards would have been employed. It is also possible that a given complaint might not be "sustained" for reasons other than merit, like untimely filing or lack of a proper investigation. See Beck v. City of Pittsburgh , 89 F.3d 966, 973-75 (3d Cir. 1996) ; Kane v. Lewis , 2009 WL 10681966, at *2 (D. Md. May 6, 2009) ; see also Torres v. Kuzniasz , 936 F.Supp. 1201, 1206 (D.N.J. 1996) ("[D]ocumentation of civilian complaints and the police department's resultant investigations are relevant and necessary to the plaintiffs' burden of establishing the requisite policy or custom and causation required for municipal liability under § 1983.");
*1337 Castellani v. City of Atlantic City , 102 F.Supp.3d 657, 665 (D.N.J. 2015) ("Plaintiff is entitled to test the sufficiency and accuracy of the internal affairs investigations in connection with Plaintiff's argument that Defendant Atlantic City had a policy, practice, and/or custom of inadequately investigating civilian complaints."); Serigne v. Preveau , 2013 WL 1789520, at *5 (E.D. La. Apr. 26, 2013) (ordering local government to provide discovery on "all complaints, sustained, unsustained, or otherwise.")
Finally, Defendants take issue with the temporal scope of Plaintiff's subpoena requests. That is, Defendants lament that the subpoenas ask for documents on prior incidents and complaints going back ten years from the date of the shooting incident in this case, April 24, 2014, though Defendants do not proffer any specific alternative. Plaintiff opposes any narrower time limit, citing Phillips v. City of New York , 277 F.R.D. 82, 83 (E.D.N.Y. 2011), an excessive force § 1983 case in which the court sanctioned discovery into complaints and disciplinary records going back ten years. The court would note, however, that the discovery sought in Phillips was limited to records of the individual defendant police officers involved in the subject incident with the plaintiff. See id. By contrast, Plaintiff's subpoenas to the FOPs are far broader, requesting all documentation for all incidents involving "any City of Birmingham police officer." (Doc. 58-1 at 5; Doc. 58-2 at 5). The court recognizes that any hard time limitation on discovery into prior incidents is arbitrary on some level. Nonetheless, in its discretion, the court finds it appropriate to modify the subpoenas by limiting them to documentation on incidents occurring five years prior to April 24, 2014. See, e.g., Horn v. Wallace , 2007 WL 4414843, at *3 (N.D. Fla. Dec. 17, 2007) ; Serigne , 2013 WL 1789520, at *4-5 ; Grayson v. Dewitt , 2016 WL 5801699, at *6 (M.D. Pa. Oct. 5, 2016) ; Hogan v. Robinson , 2006 WL 1049979, at *5-6, 2006 U.S. Dist. LEXIS 33531, at *16-17 (E.D. Cal. 2006) ; cf. Santos v. City of Culver City , 228 F. App'x 655, 657 (9th Cir. 2007) (holding that the magistrate judge did not abuse his discretion in denying as overbroad the plaintiff's request for all complaints and arrest reports reflecting an improper use of force by any police officer in the department for a five-year period).
B.
Defendants also object to Plaintiff's subpoenas to the FOPs on the additional grounds that they (1) seek privileged information and (2) are overly burdensome. Taking the latter argument first, the court finds that it does not entitle Defendants to any relief. For starters, as Plaintiff points out, Defendants are not the target of the subpoenas, so they do not themselves suffer any burden, undue or otherwise, in compiling responsive documents. But even assuming arguendo that Defendants have standing to raise the ostensible burdensomeness to the FOP, Defendants objection on that basis is merely boilerplate and conclusory and thus insufficient. See Panola Land Buyers Ass'n v. Shuman , 762 F.2d 1550, 1559 (11th Cir. 1985) ; Coker v. Duke & Co. , 177 F.R.D. 682, 686 (M.D. Ala. 1998) ; FDIC v. Brudnicki , 291 F.R.D. 669, 679 n. 1 (N.D. Fla. 2013).
Defendants likewise assert that the information Plaintiff seeks from the FOPs is "privileged" and "confidential." (Doc. 58, ¶¶ 4, 5, 8; Doc. 65, ¶¶ 1, 2, 3, 4, 8). However, aside from their objection to the subpoenas' requests for documents identifying any attorney that the FOP may have *1338 assigned or referred to Officer Aguirre or Haluska, a matter discussed below, Defendants do not identify what species of privilege is supposedly applicable, nor do they offer any detailed argument or citation to authority. Accordingly, the court finds that Defendants' generalized objections based on "privilege" and "confidentiality" are due to be rejected as insufficient as well.
Defendants do specifically identify the attorney-client privilege as protecting from disclosure documents showing the "name, referral, and assignment" of any attorney retained by the FOP to represent Aguirre or Haluska in relation to the incident involving Plaintiff.[4] (Doc. 58 at 5-6; Doc. 65 at 3-4). However, Defendants again cite no authority to support that claim of privilege. Indeed, the "great weight of authority ... refuses to extend the attorney-client privilege to the fact of consultation or employment, including the component facts of the identity of the client and the lawyer." Howell v. Jones , 516 F.2d 53, 58 (5th Cir. 1975)[5] ; see also Goddard v. United States , 131 F.2d 220, 221 (5th Cir. 1942) (the identity of a consulted attorney is not privileged). Rather, the "identity of a client and the receipt of attorney's fees normally are not privileged matters," except "where the disclosure of the identity would also reveal the privileged motive for the client to seek legal advice." In re Grand Jury Matter No. 91 - 01386 , 969 F.2d 995, 997 (11th Cir. 1992). That exception is obviously not applicable here. Defendants' claim of attorney-client privilege fails.
Nevertheless, Defendants also contend that documents identifying attorneys that either FOP might have assigned or referred to Officer Aguirre or Haluska are irrelevant because their only "possible use ... is to obtain privileged or otherwise protected information from the attorney(s)." (Doc. 58 at 6). Indeed, it is not apparent to the court how the identity of legal counsel that either FOP entity might have assigned or referred is particularly relevant, and Plaintiff has offered no explanation. As Defendants suggest, private communications between Aguirre, Haluka, and attorneys with whom they might have consulted about the case after having been referred by either of the FOPs would generally be protected by the attorney-client privilege. See United States v. Schaltenbrand , 930 F.2d 1554, 1562 (11th Cir. 1991). Likewise, the work product doctrine protects from disclosure documents prepared by an attorney acting for the client in anticipation of litigation. See Rule 26(b)(3)(A), Fed. R. Civ. P.; Hickman v. Taylor , 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). More broadly, it is also well established that the fact that a party has sought to confer with or retain a lawyer is not itself probative of guilt or innocence. See United States v. McDonald , 620 F.2d 559, 564 (5th Cir. 1980) ; Murphy v. City of Flagler Beach , 761 F.2d 622, 629 (11th Cir. 1985) (standing alone, the fact that "a defendant has consulted with his attorney is of no probative value as to issues of good faith in attempting to meet Constitutional or other legal requirements");
*1339 see also Pace v. National Union Fire Ins. Co. of Pittsburgh , 2015 WL 11199154 at *3 (N.D. Ga. Feb. 3, 2015) (granting motion in limine seeking to exclude as irrelevant any references to when, how, or why a party hired his counsel); Jones v. City of Lincoln, Ill. , 2016 WL 9774505, at *3 (C.D. Ill. Jan. 25, 2016) (granting motion in limine to bar as irrelevant any mention that defense counsel was employed by the defendant municipality). It is also not clear why the identity of any attorney that the officers may have either previously consulted or retained would otherwise bear on the claims or defenses in this case. Cf. GuideOne Mut. Ins. Co. v. Rock , 2009 WL 2252206, at *10 (N.D. Miss. July 28, 2009) (excluding as irrelevant evidence of the identity of the defendant's previous legal counsel); Smith v. Fox , 2009 WL 2033152, at *2 (E.D. Ky. July 10, 2009) ("[T]he Court agrees with Plaintiff that the identity of her first counsel is irrelevant, and that evidence on that subject is likely to be unduly prejudicial."). Based on the above, the court will sustain Defendants' objection to the subpoenas' requests into this matter.
II.
A.
Also to be considered by the court are two motions by Plaintiff, each of which asks for an extension of deadlines in the scheduling order. (See Docs. 60, 66). Because those motions are intimately related, the court addresses them together in this section. In his first motion, filed on October 6, 2017, Plaintiff asks the court to extend the respective deadlines to complete discovery (October 13, 2017), to file dispositive motions (November 13, 2017), and for subsequent trial-related matters, all by 120 days. (Doc. 60). In his second motion, filed October 29, 2017, he asks for an extension of the deadline to submit rebuttal expert reports by at least 60 days. (Doc. 66; see also Docs. 70, 72). Both motions are opposed by Defendants. (Docs. 62, 67, 71).
In a related vein, while these motions by Plaintiffs were pending, and with the then-existing dispositive motion deadline looming, Defendants filed their own motion for an extension of that same deadline. (Doc. 68). In particular, Defendants asked that the court, if it were to deny Plaintiff's requested extensions of discovery, extend the dispositive motion deadline to two weeks after the date that the court denied Plaintiffs' motions to extend. On the other hand, Defendants asked that, if the court were to grant an extension of discovery upon Plaintiff's motion, the dispositive motion deadline likewise be reset to 30 days past the new-established close of discovery. That motion by Defendants was unopposed, and the court has granted it. (Doc. 69).
Turning back to Plaintiff's motions, he initially asked for an extension of unexpired deadlines generally by 120 days, including those governing the close of discovery and the filing of dispositive motions, on three grounds. First, Plaintiff asserts he needs additional time to conduct discovery in light of an audiotape he described as "recently obtained" and as "present[ing] strong indications of a conspiracy to cover up the false arrest and malicious prosecution in this case." (Doc. 60, ¶ 3; see also Doc. 66 at 3 (wherein Plaintiff asserts that the audio recording "proves almost unequivocally that there has been a malicious prosecution") ). Second, Plaintiff contends he needs additional time to follow up on *1340 supplemental disclosures served by the City on September 29, 2017, which contained 242 documents not previously disclosed or produced. (Id. ¶ 5). Plaintiff states that "[t]he majority" of these documents "consist of the City's rules, regulations, directives and policies relating to the use of force, officer training, fire arms training, etc." (Id. at 3 n. 5). And third, Plaintiff invokes his outstanding subpoenas to the FOPs that were addressed previously in this order, which Plaintiff offers will necessitate additional discovery as well. (Id. ¶ 6).
Defendants filed a "Response in Opposition to Plaintiff's Motion to Modify the Scheduling Order." (Doc. 62). Defendants first broadly argue that any and all further discovery Plaintiff might wish to pursue has been rendered "irrelevant" because, Defendants sweepingly insist, "this action should be dismissed with prejudice." (Id. at 2). In support, Defendants point to a new, "slow motion version" of the police dashcam video recording that captured the shooting incident underlying Plaintiff's claims. Defendants suggest that new version, was generated with the "benefit of expert video analysis technology" (id. ) by one of their experts, Barry Dickey, who Defendants disclosed, along with the video, on September 29, 2017.[6] Defendants say that Dickey "slowed down the video and enhanced the clarity of the images" (Doc. 67 at 3, ¶ 3) such that it now "clearly shows that Plaintiff pointed a gun at ...Officer Aguirre" immediately before Aguirre shot Plaintiff. (Doc. 62 at 2). Defendants maintain that the new version of the video thus vindicates Aguirre and exposes Plaintiff as a perjurer who is due to face renewed charges for attempted murder. (Id. ) Defendants further offer that "yet another reason that Plaintiff's claims should be dismissed with prejudice" is that only the district attorney, not Defendants, had the legal authority to file the criminal charges against Plaintiff. (Id. ) Defendants thus say that, because they were not responsible for prosecuting Plaintiff, he cannot maintain his claims for malicious prosecution or false arrest. (Id. ) Defendants then focus more narrowly by arguing that none of the items cited by Plaintiff's motion, namely, (1) the audiotape, (2) the newly-produced documents in the City's supplemental disclosure, nor (3) the FOP subpoenas, justifies an extension of discovery.
Plaintiff responded with a consolidated filing that includes both (a) a reply in support of his first motion to extend deadlines by 120 days and (b) a second motion to modify the scheduling order, specifically to "extend the rebuttal expert deadline by 60 or more days." (Doc. 66 at 1). The essence of that filing is an attack on Dickey's new version of the dashcam video recording. Plaintiff decries it as a fake, ginned up version created via the use of "photo-shop type" software to alter the original video in which, Plaintiff says, no gun can be seen in his hand. (Id. at 2). Plaintiff further states that Defendants have thus far denied his requests to produce, prior to any deposition of Dickey, the "native format" of both the original recording that Dickey received and the "modified or enhanced files" he received or created, as well as the name and version of the software he used in his analysis. Plaintiff therefore asks the court to extend the time *1341 for expert discovery by at "least an additional 60 days" to allow him to name a rebuttal expert, produce a report, depose Dickey, and otherwise investigate the bona fides of the video. (Id. at 6).
Defendants oppose Plaintiff's motion to extend the rebuttal expert deadline. (Doc. 67). Indeed, Defendants first argue that Plaintiff's motion is due to be denied because, Defendants emphasize, the court's scheduling order includes no provision for rebuttal experts at all, so there really is no "rebuttal expert deadline" to "extend." (Id. ¶ 1). Defendants further contend that Plaintiff will not suffer unfair prejudice if he is denied an opportunity to employ a rebuttal expert both because (1) Plaintiff could have hired his own expert initially concerning the enhancement of the original video but chose not to do so and (2) Plaintiff had an opportunity to depose Dickey to cross-examine him about how he made the enhanced video. Pushing back against Plaintiff's attacks on the reliability and genuineness of Dickey's video itself, Defendants characterize it is merely the original dashcam video "only slowed down and focused." (Id. ¶ 6). Furthermore, Defendants insist that, contrary to Plaintiff's assertion, the original "unenhanced" video also does, in fact, show Plaintiff holding a gun in his right hand. (Id. ¶ 5).
Plaintiff replied with a "supplement" to his motion to extend the rebuttal expert deadline. (Doc. 70). There Plaintiff claims that another of Defendants' experts, Ronald Kiker, slated to give opinions on police practices, testified at his then-recent deposition that he too had "altered" the original dashcam video and that he planned to testify that his altered video shows a gun in Plaintiff's hand. (Id. at 1). As such, Plaintiff argues, he now needs an opportunity to have one or more rebuttal experts address the opinions of both Dickey and Kiker with respect to their respective alterations of the original video. (Id. at 2). Defendants, however, deny that Kiker testified to having made "any enhancements/alterations" to the original video. (Doc. 71). Rather, Defendants quote Kiker's deposition testimony in which he recites that he used a software program called "VideoCleaner" to view the video frame-by-frame but that he "didn't attempt any enhancements." (Id. at 2). To that Plaintiff replies that, even if Kiker did not "enhance" the original video, his deposition testimony supports that he nonetheless "altered" it, if only by using a software program to "convert" the original video from "NP4" format into "AVI" format, which he then viewed through VideoCleaner. (Doc. 72 at 1-2). More importantly, Plaintiff argues, even if Kiker testified he did not perform any enhancements or alterations, Plaintiff "does not have to take his word for it." (Id. at 2). Rather, Plaintiff says, he is entitled to conduct discovery on what Kiker did to the video, even if perhaps unknowingly, and a rebuttal expert is needed to do so.
B.
Under Rule 16(b), Fed. R. Civ. P., the court is required to enter a scheduling order that limits the time to join other parties, amend the pleadings, complete discovery, and file dispositive motions. Rules 16(b)(1), (3)(A), Fed. R. Civ. P. A scheduling order also "may ... include other appropriate matters." Rule 16(b)(3)(B), Fed. R. Civ. P. Once entered, a scheduling order "may be modified only for good cause and with the judge's consent." Rule 16(b)(4), Fed. R. Civ. P. "This good cause standard precludes modification unless the schedule cannot 'be met despite the diligence *1342 of the party seeking the extension.' " Sosa v. Airprint Sys., Inc. , 133 F.3d 1417, 1418 (11th Cir. 1998) (quoting Fed. R. Civ. P. 16 advisory committee's note); see also Southern Grouts & Mortars, Inc. v. 3M Co. , 575 F.3d 1235, 1241-43 (11th Cir. 2009). Ultimately, whether to allow a modification of the scheduling order is a matter within the court's discretion. Oravec v. Sunny Isles Luxury Ventures, L.C. , 527 F.3d 1218, 1231 (11th Cir. 2008).
To start with, the court rejects Defendants' overture to deny Plaintiff's motions to extend discovery and other Rule 16(b) deadlines on the basis that the dashcam video recording purportedly calls for this action to be dismissed. That is so whether Defendants' argument relies on the "original" recording, Dickey's "enhanced" or "focused" slow motion version, or any other. In short, Defendants here effectively seek entry of summary judgment in their favor on all claims, based solely on the video. However, Defendants have not filed anything that even resembles a formal motion under Rule 56, Fed. R. Civ. P.; that at all acknowledges the legal standards applicable to such a motion; or applies those standards to each of the particular claims in the Amended Complaint. Rather, Defendants' arguments urging dismissal based on the video are all presented in the guise of merely opposing Plaintiff's motions for a modification of the scheduling order. As such, without considering the merits of the parties' underlying arguments about the video, it suffices to say that the court simply declines, in its discretion, to treat Defendants' opposition filings as tantamount to a motion for summary judgment.
The court also will not deny Plaintiff's motions to extend deadlines based on Defendants' contention that "Plaintiff's claims should be dismissed with prejudice" because it is the district attorney, a non-party, rather than any of the Defendants, who has the legal authority to determine whether to prosecute Plaintiff on a criminal charge. (Doc. 62 at 2). This argument also suffers from the same basic flaw as the one just considered. That is, Defendants are, as a practical matter, asking the court to grant summary judgment or a dismissal for failure to state a claim under Rule 12(b)(6), Fed. R. Civ. P., as to some or all of Plaintiff's claims without either type of motion ever having been filed by Defendants. Rather, Defendants have, again, made this argument only in an opposition to a motion for relief filed by Plaintiff, with no acknowledgment or analysis by Defendants of any applicable legal standards, nor any citation to authority.
The court next considers Plaintiff's initial claim that he is entitled to an extension of deadlines by 120 days to conduct additional discovery to follow up on three specific items, to wit: (1) an audiotape recording that Plaintiff says confirms the validity of his claim for malicious prosecution; (2) documents included in the City's supplemental disclosure on September 29, 2017; and (3) the FOP subpoenas previously discussed. Defendants oppose any extension based on any of these items. They are considered in turn.
First, Plaintiff asserts he needs additional time to conduct discovery in light of an audiotape he describes as "recently obtained" and as "present[ing] strong indications of a conspiracy to cover up the false arrest and malicious prosecution in this case." (Doc. 60, ¶ 3; see also Doc. 66 at 3 (wherein Plaintiff asserts that the audio recording "proves almost unequivocally that there has been a malicious prosecution"). Defendants respond that Plaintiff's counsel had the audiotape recording in *1343 their possession by no later than early August 2017, as evidenced by a motion they filed concerning it on August 9, 2017. (See Doc. 37). Therefore, Defendants point out, Plaintiff had more than two months between then and the close of discovery on October 13, 2017, to conduct additional investigation and discovery regarding the recording. Plaintiff, however, has not specifically identified what additional discovery he might intend to perform with regard to the audiotape or why he could not have done it by the close of discovery established by the Rule 16(b) order. The court agrees with Defendants, therefore, that Plaintiff has not shown that he could not meet the discovery deadline in the exercise of due diligence as it relates to the audiotape recording.
Second, Plaintiff claims he is entitled to additional discovery time to follow up on supplemental disclosures served by the City on September 29, 2017, which contained 242 documents not previously disclosed or produced. (Id. ¶ 5). Plaintiff states that "[t]he majority" of these documents "consist of the City's rules, regulations, directives and policies relating to the use of force, officer training, fire arms training, etc." (Id. at 3 n. 5). Again, however, Plaintiff has not identified any particular additional discovery that he proposes to conduct with respect to these documents. Moreover, while Plaintiff laments that the City produced these documents only two weeks before the close of discovery on October 13, 2017, Plaintiff does not claim that the City was actually due to produce them any earlier, including because they fell within a request for production served on City. Rather, Defendants produced the documents as part of a supplemental disclosure only because they were reviewed by their experts. Again, the court finds that Plaintiff has not exhibited sufficient diligence to warrant an extension of discovery based on the need to further investigate these documents. That is so in no small part because Defendants have asserted, and Plaintiff has not specifically disputed, that Plaintiff failed to request the City's relevant police policies and procedures in the almost one year provided for discovery in this action. It is simply unclear to the court why, given the nature of the documents as Plaintiff himself describes them and the nature of Plaintiff's claims seeking to impose municipal liability, Plaintiff did not long ago, indeed, near the outset of the case, serve requests for production encompassing such documents under Rule 34, Fed. R. Civ. P.
Similar concerns lead the court to find that Plaintiff also is not entitled to extended discovery to follow up any documents returned in response to the FOP subpoenas. Plaintiff did not serve his notices of intent to serve those subpoenas until September 21, 2017, approximately three weeks before the close of discovery. As Defendants argue, however, those subpoenas are related principally to establishing Plaintiff's claims of municipal liability against the City based on an alleged custom or policy that causes its police officers to employ excessive force or make false arrests, claims and issues that have been in this case from the very beginning. As such, there is no reason why Plaintiff could not have sought to serve the FOP subpoenas within the time limit for discovery set by the scheduling order in the exercise of due diligence. Plaintiff's original motion to extend discovery generally and all other deadlines by 120 days is due to be denied.
The final matter to be considered by the court is Plaintiff's motion "to extend *1344 the rebuttal expert deadline by 60 or more days." (Doc. 66 at 1). To be clear, it undisputed that the court's Rule 16(b) order (Doc. 30), which is based on the report of parties' planning meeting (Doc. 28), makes no provision for rebuttal expert disclosures by any party. Defendants argue that such omission implies that Plaintiff's motion is due to be summarily denied. Not so says Plaintiff, pointing to Rule 26(a)(2)(D), Fed. R. Civ. P., which provides in relevant part:
(D) Time to Disclose Expert Testimony. A party must make these disclosures at the times and in the sequence that the court orders. Absent a stipulation or a court order, the disclosures must be made:
* * *
(ii) if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) [governing experts who must provide a written report] or (C) [governing experts who need not provide a formal report], within 30 days after the other party's disclosure.
Plaintiff interprets the above to establish a "default rule" whereby rebuttal expert disclosures are due within 30 days after the expert disclosure made by the opposing expert whose opinion is to be rebutted. Defendants reject that reading, highlighting that Rule 26(a)(2)(D) expressly states that it is effective "absent a stipulation or court order." According to Defendants, the fact that the court's Rule 16(b) order in this case contains no provision for rebuttal expert disclosures trumps any provision for a 30-day rebuttal expert disclosure deadline in Rule 26(a)(2)(D). Neither side supplies the court with any caselaw in support of its interpretation.
Ultimately, the court concludes that it need not decide whether Rule 26(a)(2)(D)(ii) technically applies. That is so because the court generally agrees with Plaintiff that, under the particular circumstances of this case, good cause exists to modify the scheduling order under Rule 16(b)(4). In particular, the court finds good cause to allow Plaintiff to conduct rebuttal expert discovery with respect to any "enhancement" or "alteration" of the "original" dashcam video recording that has found its way into the version of the videos that Defendants' experts, Dickey and Kiker, intend to use as the basis of opinions to be given at trial. The dashcam video of the subject incident is obviously one of the most important pieces, if not the singular most important piece, of evidence in this case. And for all of Defendants' insistence that the original version of the recording shows Plaintiff holding a gun, it would seem that it is, at the very least, not unambiguously so. If it were so clear, why did Defendants feel the need to hire an expert, Dickey, who Defendants seem to acknowledge has done something to "enhance" or "alter" the video in a way that makes it more likely for those watching it to believe they see Plaintiff holding a gun? There is also, of course, the matter of the district attorney's office, despite having the original video, ultimately deciding to drop the attempted murder charges that had been pending against Plaintiff for over a year based on the incident. Thus, exactly what changes were made to the recording and how they were done is paramount. Fairness dictates that Plaintiff be given a reasonable opportunity to investigate those matters, including through the use of his own expert to rebut opinion testimony by Defendants' experts reached after considering enhanced or altered video images.
The court is not swayed from that determination by Defendants' arguments that Plaintiff would not suffer unfair prejudice *1345 if he were denied a rebuttal expert. Defendants first say that Plaintiff could have hired his own expert initially concerning the enhancement of the video but chose not to. However, the issue, to the court's mind, is not whether Plaintiff could have or should have hired his own expert to do his own enhancement of the video. Indeed, it appears even now that Plaintiff is content to rely on the original version of the video to establish his claims. That is, the court does not understand Plaintiff to be asking for a chance to have his own expert create a competing enhanced video that would shows more clearly that Plaintiff was not holding a gun. Rather, Plaintiff is asking for an opportunity to use a rebuttal expert to discredit the accuracy and reliability of any altered videos that Defendants' experts propose to use.
Defendants also contend that Plaintiff would not suffer unfair prejudice because he would have had an opportunity to depose Dickey to cross-examine him about how he made the enhanced video. However, there are at least two flaws with this argument. One, it would appear that Dickey's report does not include information on the name and version of software he used to enhance the video and exactly how he did so. That information would seem to be critical to understanding the basis of any opinions he reached based on such video as well as necessary for meaningful cross-examination on the issue. Defendants seem to acknowledge, however, that they also unwilling to grant Plaintiff's request for that information in advance of Dickey's deposition. And two, given that the video evidence and any enhancements or alterations are of the utmost importance, the court finds it appropriate for Plaintiff to have a chance to present his own affirmative evidence rebutting the testimony of Defendants' experts, not merely try to poke defensive holes in that testimony through cross-examination alone.
The court will therefore grant Plaintiff's motion to modify the scheduling order with respect to rebuttal experts as follows: Plaintiff shall have until May 4, 2018, to serve any rebuttal expert report(s) relating to any enhancements or alterations to the dashcam video recording that Defendants intend to offer at trial or are considered by Defendants' experts. The parties shall then have an additional 45 days to complete any associated expert depositions.
III.
Based on the foregoing, the court hereby ORDERS as follows: Defendants' objection to the Plaintiff's FOP subpoenas and motion to quash (Doc. 58) is GRANTED IN PART ; Defendants subpoenas are modified to allow discovery of documents related to prior incidents, occurring up to five years prior to April 24, 2014, involving (1) the discharge of a firearm by any City police officer against a citizen accompanied by a complaint or allegation of unconstitutionally excessive force; (2) allegations that a City police officer violated the Fourth Amendment rights of a pedestrian by conducting a stop without reasonable suspicion or by making an arrest without probable cause; and (3)an allegation of that any City police officer deliberately fabricated inculpatory testimony or evidence or deliberately destroyed or concealed exculpatory evidence and thereby caused a citizen to be arrested, imprisoned, and/or prosecuted. Plaintiff is precluded from obtaining documents showing what attorney(s) either FOP may have assigned or retained to represent Officer Aguirre or Officer Haluksa in connection with the incident underlying Plaintiff's claims.
*1346 Plaintiff's motion to modify the Rule 16(b) scheduling order by extending discovery generally and all other deadlines by 120 days (Doc. 60) is DENIED .
Finally, Plaintiff's motion to modify the scheduling order with respect to rebuttal experts (Doc. 66) is GRANTED as follows: Plaintiff shall have until May 4, 2018, to serve any rebuttal expert report(s) relating to any enhancements or alterations to the dashcam video recording that Defendants intend to offer at trial or are considered by Defendants' experts. The parties shall then have until June 18, 2018, to complete any associated expert depositions. The dispositive motion deadline is also extended to July 18, 2018.
It is SO ORDERED , this 4th day of April, 2018.

References to "Doc(s). __" are to the document number(s) of the pleadings, motions, and other materials in the court file, as compiled and designated on the docket sheet by the Clerk of the Court. Unless otherwise noted, pinpoint citations are to the page of the electronically-filed document in the court's CM/ECF system, which may not correspond to the pagination on the original "hard copy" of the document presented for filing.

On that same date, Plaintiff also served a notice of intent to serve a subpoena on Danny Carr, Jefferson County District Attorney Pro Tem. (See Doc. 58 ¶ 1). No objection or motion was filed with respect to that subpoena.

The court notes that Plaintiff has not contested Defendants' standing to challenge the FOP subpoenas, on relevancy grounds or otherwise. (See generally Doc. 64). Ordinarily, a party lacks standing to seek to quash a subpoena issued to a non-party unless the objecting party claims some personal right or privilege with regard to the documents sought. Brown v. Braddick , 595 F.2d 961, 967 (5th Cir. 1979) ; 9A C. Wright, A. Miller, et al., Fed. Prac. & Proc. § 2459 (3d ed.). Thus, a non-recipient party cannot generally move to quash or modify a subpoena on relevance, cost, or proportionality grounds. Practice Commentary to December 2013 Amendments to Rule 45, Fed. R. Civ. P. On the other hand, many courts also hold that, such standing questions aside, a party can challenge the scope of a Rule 45 subpoena by seeking a protective order under Rule 26(c), Fed. R. Civ. P. based on the party's own interests, such as keeping the scope of discovery reasonable, rather than on the interests of the non-party targeted by the subpoena. Id. ; see, e.g., Sun Capital Partners, Inc. v. Twin City Fire Ins. Co. , 303 F.R.D. 673, 678 (S.D. Fla. 2014), aff'd , 2015 WL 11921411 (S.D. Fla. July 6, 2015) ; Auto-Owners Ins. Co. v. Southeast Floating Docks, Inc. , 231 F.R.D. 426, 429 (M.D. Fla. 2005). Ultimately, because Plaintiff has not contested Defendants' standing to challenge the FOP subpoenas, the court will not further consider the matter.

While both of the subpoenas ask for documents revealing the "name" of any attorney(s) retained by the FOP to represent Officer Aguirre or Officer Haluska (Docs. 52-1 at 5, 52-2 at 5), only the subpoena to the Birmingham FOP asks for documents also showing the "referral and assignment" of such attorney(s). (Doc. 58-2 at 5). It is unclear to the court, however, that there is any practical difference between the two formulations.

The decisions of the former Fifth Circuit handed down before October 1, 1981, are binding in the Eleventh Circuit. Bonner v. City of Prichard , 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

A copy of Dickey's "slow motion version" of the video is attached as Exhibit A to Defendants' response in opposition to Plaintiff's motion to extend deadlines by 120 days. (See also Doc. 63).